TM:RJN
F.#2012R00002

UNITED STATES DISTRICT COURT 
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - -x
IN THE MATTER OF AN APPLICATION      :
OF THE UNITED STATES OF AMERICA      :     SEALED APPLICATION
FOR AN ORDER (1) AUTHORIZING THE     :
USE OF A PEN REGISTER AND A TRAP AND  :
TRACE DEVICE; (2) AUTHORIZING        :
RELEASE OF SUBSCRIBER INFORMATION; AND  :
(3) AUTHORIZING THE RELEASE OF       :
HISTORICAL CELL-SITE INFORMATION     :
- - - - - - - - - - - - - - - - - - - - - - -x

      Rachel J. Nash, an Assistant United States Attorney for

the Eastern District of New York, hereby applies to the Court for

an Order:

      1.   Pursuant to 18 U.S.C. §§ 3122 and 3123,

authorizing for a period of 60 days the installation and use of a

pen register and a trap and trace device on (631) 398-7841, a

wireless telephone issued by AT&T Wireless and subscribed to by

Barbara Kanakis ("SUBJECT TELEPHONE 1") and (646) 626-2254, a

wireless telephone issued by MetroPCS ("SUBJECT TELEPHONE 2"),

(collectively, the "SUBJECT TELEPHONES").[1] Together, AT&T

Wireless and MetroPCS are referred to as the service providers.

As discussed in more detail below, the SUBJECT TELEPHONES were in

contact with each other just prior to a shooting that occurred on

December 8, 2011 in Queens, New York.

---

    [1] Investigative Agents have not yet been able to determine
the subscriber information for SUBJECT TELEPHONE 2.

2.     Pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing disclosure of subscriber information pertaining to telephone numbers identified through the pen register and trap and trace device, to be limited to the names and addresses, whether listed or unlisted, length of service, periods of telephone activation and means of payment for all dialing, routing, addressing, or signaling information captured by the pen register on the SUBJECT TELEPHONES and for dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the SUBJECT TELEPHONES as captured by the trap and trace device on the SUBJECT TELEPHONES (the "SPECIFIED SUBSCRIBER INFORMATION"),[2] upon oral or written demand by special agents of the Federal Bureau of Investigation (the "FBI" or "investigative agency").

3.     Pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing within seven days the disclosure of recorded information identifying the base station towers and sectors that received transmissions from the SUBJECT TELEPHONES at the beginning and the end of calls or text message transmissions, and

---

[2]  The SPECIFIED SUBSCRIBER INFORMATION therefore includes records that would also be subject to disclosure by subpoena under 18 U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes "local and long distance telephone connection records, or records of session times and durations" as described in 18 U.S.C. § 2703(c)(2)(C).

the mobile switching center serving the SUBJECT TELEPHONES during
any calls or text message transmissions made during the following
time periods: (a) for SUBJECT TELEPHONE 1, July 1, 2011 through
August 31, 2011 and November 25, 2011 through December 9, 2011
and (b) for SUBJECT TELEPHONE 2, November 25, 2011 through
December 9, 2011 (the "HISTORICAL CELL-SITE INFORMATION").

In support of this application I state the following:

I.   AUTHORITY FOR APPLICATION

4.   I am an Assistant United States Attorney in the
Office of Loretta E. Lynch, United States Attorney for the
Eastern District of New York.  As such, I am an "attorney for the
Government" as defined in Rule 1(b)(1) of the Federal Rules of
Criminal Procedure, and therefore, pursuant to 18 U.S.C. § 3122,
may apply for an Order authorizing the installation and use of
pen registers and trap and trace devices.  Moreover, I am also a
duly-authorized representative of a "governmental entity" under
18 U.S.C. § 2703(c) and (d) and, as such, am also authorized to
apply for an Order authorizing the disclosure of the SPECIFIED
SUBSCRIBER INFORMATION and HISTORICAL CELL-SITE INFORMATION.

5.   The Court has authority to order the installation
and use of a pen register or a trap and trace device anywhere in
the United States if the Court finds that the attorney for the
government has certified to the Court that the information likely

3

to be obtained by such installation and use is relevant to an ongoing criminal investigation.  18 U.S.C. §§ 3122 and 3123.

      6.   The Court is authorized to order the disclosure of the HISTORICAL CELL-SITE INFORMATION upon the government offering specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation.  18 U.S.C. § 2703(d).  The Court is also authorized to order the disclosure of the SPECIFIED SUBSCRIBER INFORMATION (which is within a category of subscriber information listed in 18 U.S.C. § 2703(c)(2)), upon the government offering specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation.  In the Matter of an Application of the United States of America for an Order Authorizing the Use of Two Pen Register and Trap and Trace Devices, Misc. No. 08-308 (NGG), 2008 WL 5082506, at *3 & n.7 (E.D.N.Y. Nov. 26, 2008); 18 U.S.C. § 2703(c)(1) & (d); accord In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006).  But see, e.g., In the Matter of the Application, 497 F. Supp. 2d 301, 311 (D.P.R. 2007).

## II.  FACTS SUPPORTING APPLICATION

      7.   With respect to the proposed pen register and trap and trace device and the HISTORICAL CELL-SITE INFORMATION, I have

discussed the matter fully with FBI special agents involved in the investigation. Based upon my discussion with FBI special agents, I believe and, for the following reasons, hereby certify that the information likely to be obtained by the use of the pen register and trap and trace device and by the HISTORICAL CELL-SITE INFORMATION is relevant to an ongoing criminal investigation as required by 18 U.S.C. § 3123(a). First, the FBI is conducting a criminal investigation into possible violations of federal criminal laws by Peter Kanakis ("Kanakis") and others, including extortion, in violation of 18 U.S.C. § 1951(a), extortionate extension of credit, in violation of 18 U.S.C. § 892(a) and extortionate collection of credit, in violation of 18 U.S.C. § 894(a). Second, it is believed that Kanakis and others known and unknown have used and will continue to use the SUBJECT TELEPHONES in furtherance of the above offenses. Third, pen register and trap and trace device information will likely help to establish, among other things, an association-in-fact between Kanakis and other subjects of the investigation, and will identify other potential suspects and co-conspirators of the aforementioned offense. HISTORICAL CELL-SITE INFORMATION will likely help to identify the location of the targets and their co-conspirators at the time the crimes occurred, the meeting places used by the targets and their co-conspirators, and the geographic breadth of the conspiracy.

8.   In support of its request for an Order under
18 U.S.C. § 2703(c)(1) and (d) directing the furnishing of the
SPECIFIED SUBSCRIBER INFORMATION and HISTORICAL CELL-SITE
INFORMATION, and based upon discussions with special agents of
the investigative agency, the government hereby sets forth the
following specific and articulable facts showing that there are
reasonable grounds to believe that the evidence sought is
relevant and material to an ongoing criminal investigation,
namely: this investigation has established information indicating
that the targets are using the SUBJECT TELEPHONES for the
purposes of conducting illegal activities including extortion and
loan sharking, as set forth below:

a.   John Doe #1 has advised that approximately
five years ago, he borrowed a total of $50,000 from an individual
known to him as Jimmy Ferrara.  John Doe #1 borrowed a portion of
the loan at an interest rate of six percent per week, and the
remainder at three percent per week.  According to John Doe #1,
he has repaid the loan and interest in full, but Ferrara
continues to demand additional payments.

b.   John Doe #1 advised that on several occasions
during 2011 and during the past five years, he has made loan
payments to some of Ferrara's associates, including, among
others, an individual known to John Doe #1 as "Pete," rather than
paying Ferrara directly.  John Doe #1 has identified a photograph

6

of Peter Kanakis as the individual he knows as Pete, who collected loan payments for Ferrara on several occasions.  John Doe #1 has advised that Kanakis visited John Doe #1 at John Doe #1's business in Astoria, Queens, on multiple occasions to collect money John Doe #1 owed to Ferrara.  John Doe #1 advised that several times, Kanakis wore brass knuckles that he revealed to John Doe #1 as a threat to ensure that John Doe #1 continued to make payments to Ferrara.

           c.    John Doe #1 further advised that during the summer of 2011, an individual exited a Chevrolet Suburban, with License Plate Number EXF8393, and shook a baseball bat at John Doe #1 near John Doe #1's residence.  John Doe #1 advised that he recognized the individual he knows as Pete inside the Suburban, but did not recognize the individual who got out of the car and threatened John Doe #1 with the bat.  Database records checks reflect that a Chevrolet Suburban, with License Plate Number EXF8393 is registered to Barbara Kanakis, who is married to Peter Kanakis.

           d.    Approximately five months later, on December 8, 2011, John Doe #1 advised that he attempted to drive out of the driveway of his residence in Queens when two individuals driving a silver car blocked his driveway.  John Doe #1 has advised that he usually leaves his house at 6:00 am, but left about one hour later than usual on December 8, 2011, because of a

7

health issue.  As John Doe #1 backed out of his driveway, one of the individuals got out of the silver car and shot into John Doe #1's car, but did not hit John Doe #1.  Ballistics tests demonstrate that the bullets fired into John Doe #1's car were .25 caliber bullets.  As the assailants drove away, John Doe #1's car continued to move in reverse and hit the rear driver's side door of the assailants' car.

e.    Database records reflect that in addition to the Chevrolet Suburban registered to Kanakis's wife, a gray BMW, License Plate Number ELJ4568, is registered to Peter Kanakis. Video surveillance from a nearby residence from the time of the incident reflects what appears to be a silver or gray BMW sedan waiting across the street from John Doe #1's residence prior to 7:30 am on December 8, 2011.  At approximately 7:30 am, the surveillance video shows that the drivers of the BMW blocked John Doe #1 as he attempted to back out of his driveway, and an individual fired shots into John Doe #1's car.

f.    After the shooting, law enforcement agents attempted to locate the BMW registered to Kanakis, but it was not observed at or near his residence or place of business until January 2, 2012.  On January 2, 2012, agents observed the BMW parked in the driveway of Kanakis's residence.  They observed that the paint on the BMW appeared shiny, clean and polished. Based on the appearance of the car, law enforcement agents have

advised that the car appears to have been repaired and cleaned after the December 8, 2011 incident to remove evidence of the collision with John Doe #1's car.

g.   Telephone records reflect that SUBJECT TELEPHONE 1, which is registered to Kanakis's wife, Barbara Kanakis, is one of four cell phones registered to Barbara Kanakis under the same account.  Agents have advised me that, based on the subscriber information and their training and experience, they believe that Barbara Kanakis registered the four phones under a family plan for herself, Peter Kanakis and their two children.

h.   Telephone records further reflect that the first time that SUBJECT TELEPHONE 1 established contact with SUBJECT TELEPHONE 2 was November 25, 2011.  On December 8, 2011, SUBJECT TELEPHONE 1 was in communication with SUBJECT TELEPHONE 2 five times between 3:59 am and 4:59 am.  Between November 25, 2011 and December 22, 2011, December 8, 2011 is the only date on which SUBJECT TELEPHONE 1 and SUBJECT TELEPHONE 2 were in contact five times within one hour.  December 8, 2011 is also the only date on which SUBJECT TELEPHONE 1 and SUBJECT TELEPHONE 2 were in contact before 9:00 am.

i.   Database records reflect that Peter Kanakis resides in West Islip, Long Island.  I am informed by law enforcement agents that it takes approximately 45 minutes to one

hour to drive from West Islip, Long Island to John Doe #1's
residence in Queens.  Based on the surveillance video which shows
the BMW waiting outside John Doe #1's house prior to the
shooting, the information provided by John Doe #1 regarding the
time he regularly leaves his house (approximately 6:00 am), the
fact that SUBJECT TELEPHONE 1 and SUBJECT TELEPHONE 2 first
established contact on November 25, 2011, and the frequent
communication between SUBJECT TELEPHONE 1 and SUBJECT TELEPHONE 2
in the hours prior to the shooting, law enforcement agents have
advised me that they believe the individuals using the SUBJECT
TELEPHONES planned the shooting in advance and surveilled John
Doe #1 prior to the shooting to determine when he usually left
his residence.

              j.   The information provided by John Doe #1 is
corroborated by consensual recordings made by John Doe #1 between
December 14, 2011 and December 29, 2011.  For example, on
December 29, 2011, John Doe #1 met with Ferrara and the
individual he knows as Pete, at a diner in Bayridge, Brooklyn to
discuss the money that Ferrara claimed John Doe #1 owed to him.
Law enforcement agents conducted surveillance of the meeting and,
based on their observations, believe that the individual
accompanying Ferrara to the meeting was Peter Kanakis.  During
the recorded conversation, Ferrara advised John Doe #1 that John
Doe #1 now owed $60,000 instead of $50,000 because it took so

                               10

long for John Doe #1 to repay the loan.  Ferrara directed John
Doe #1 to pay $10,000 by the next week and to pay $1,000 per week
thereafter.  He further instructed John Doe #1 to make the
payments to Pete or to Ferrara's daughter.

   k. When John Doe #1 mentioned the shooting that
occurred on December 8, 2011, Ferrara indicated that if John Doe
#1 made the payments as Ferrara directed, he could provide
protection to John Doe #1.  I have been advised that, based on
the investigating agent's training and experience, individuals
engaged in extortion and loansharking often create a threat, such
as the shooting incident described above, to ensure that the
victim will be scared into paying for protection.

   9. I have been informed by an investigating agent
that, based on that agent's training and experience, historical
cell-site information and subscriber information with respect to
telephone numbers identified by a pen register or trap and trace
device have yielded relevant and material information in previous
investigations, including extortion and loansharking
investigations.  Such information includes leads relating to,
among other things, the identity of potential co-conspirators and
associates-in-fact.  The investigating agent has further advised
me that, based upon that agent's training and experience, one way
to identify co-conspirators is to obtain subscriber information
for calls made to and from the SUBJECT TELEPHONES, and then to

11

conduct an investigation concerning those names, addresses and the accounts they use to pay for telephone service. Based upon subscriber information, law enforcement agents would then conduct surveillance at the addresses and determine if criminal activity was occurring there, which in turn could yield potential names of co-conspirators and potential locations used in furtherance of the extortion and loan sharking conspiracy. For example, the SUBSCRIBER INFORMATION may lead agents to identity other individuals who collect money for Ferrara or Kanakis. Similarly, I have been informed by a special agent of the investigative agency that based on that agent's training and experience, historical cell-site information can be used to identify: (1) the location of the targets and their coconspirators at the time the crimes occurred; (2) the locations of businesses, residences and meeting places used by members of the conspiracy to conduct meetings, collect payments and divide illegal proceeds; and (3) the geographic breadth of the conspiracy. For example, historical cell-site information will help establish whether Kanakis and the individual using SUBJECT TELEPHONE 2 were present during the baseball bat incident that occurred in the summer of 2011 and at the shooting that occurred on December 8, 2011.

III. RELIEF REQUESTED

10. Based upon the above proffer, the government requests that the Court issue an Order that provides:

a.   Pursuant to 18 U.S.C. §§ 3122 and 3123,
authorization for the installation and use of a pen register to
record or decode dialing, routing, addressing, or signaling
information — excluding the decoding of post-cut-through dialed
digits ("PCTDD")[3] — transmitted from the SUBJECT TELEPHONES, to
record the date and time of such dialings or transmissions, and
to record the length of time the telephone receiver in question
is "off the hook" for incoming or outgoing calls for a period of
60 days.

b.   Pursuant to 18 U.S.C. §§ 3122 and 3123,
authorization for installation and use of a trap and trace device
on the SUBJECT TELEPHONES to capture and record the incoming
electronic or other impulses which identify the originating
numbers or other dialing, routing, addressing, or signaling

---

[3]   PCTDD "are digits that are dialed from a telephone after
a call is connected or 'cut-through.'"  In the Matter of an
Application of the United States of America for an Order
Authorizing the Use of Two Pen Register and Trap and Trace
Devices, Misc. No. 08-308 (NGG), 2008 WL 5082506, at *1 n.1
(E.D.N.Y. Nov. 26, 2008).  Pursuant to the proposed Order to
Service Provider, if possible, the provider will forward only
pre-cut-through-dialed digits to the investigative agency.  If
the provider's technical capabilities require it to forward all
dialed digits, including PCTDD, however, the investigative agency
will only decode and forward to special agents the numbers that
are dialed before the call is cut through.  Thus no PCTDD will be
decoded or accessed by anyone.  See id. at 3 n.3 ("It is
irrelevant that the provider will forward PCTDD to the Government
and that the Government will therefore be able, if it violates
the court order, to record and decode it....  Congress, in Title
III, has clearly expressed its belief that the Government can
without supervision limit its investigatory activities so as to
protect the constitutional rights of suspects.").

information reasonably likely to identify the sources of wire or electronic communications and to record the date, time and duration of calls created by such incoming impulses, for a period of 60 days, and that the tracing operations be without geographical limits.

        c.    Pursuant to 18 U.S.C. § 3123(b)(1)(C), authorization for the requested installation and use of a pen register and a trap and trace device to include authorization for any changed telephone number assigned to an instrument bearing the same ESN/IMSI as the SUBJECT TELEPHONES, or any changed ESN/IMSI subsequently assigned to the same telephone number as the SUBJECT TELEPHONES, or any additional changed telephone number and/or ESN/IMSI, whether the changes occur consecutively or simultaneously, listed to the same subscribers and account numbers as the SUBJECT TELEPHONES.

        d.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), a directive to the service provider, and to any other local, long distance, or wireless carrier servicing the SUBJECT TELEPHONES or a telephone that communicates with the SUBJECT TELEPHONES during the 60-day period authorized by this Order, to supply the SPECIFIED SUBSCRIBER INFORMATION, upon oral or written request by special agents of the investigative agency; and

        e.    pursuant to 18 U.S.C. § 2703(c)(1) and (d), a directive to the service providers to within seven days supply

14

HISTORICAL CELL-SITE INFORMATION for the following time periods: (1) for SUBJECT TELEPHONE 1, July 1, 2011 through August 31, 2011 and November 25, 2011 through December 9, 2011 and (2) for SUBJECT TELEPHONE 2, November 25, 2011 through December 9, 2011.

11.   The government further requests that the Court direct the service providers, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order, to notify special agents of the investigative agency, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONES, including telephone numbers and subscriber information (published and non-published, and excepting call detail records as described in 18 U.S.C. § 2703(c)(2)(C)) associated with these service changes.

12.   The government further requests that, pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), the Court direct that, upon service of the Order upon them, the service providers and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order, furnish the information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and the trap and trace device with compensation to be paid by the investigative agency

15

for reasonable expenses directly incurred in providing such
facilities and assistance.

13.   The government further requests that the Order
direct the service providers, and any other person or entity
providing wire or electronic communication service in the United
States whose assistance is used to facilitate execution of the
Order, to furnish the results of the pen register and trap and
trace device installations to special agents of the investigative
agency as soon as practicable, and on a continuing basis, 24
hours a day for the duration of the Order.

14.   Finally, pursuant to 18 U.S.C. §§ 3123(d) and
2705(b), the government also requests that the service providers,
and any other person or entity whose assistance is used to
facilitate execution of the Order, be ordered not to disclose to
the listed subscriber of the telephones, or to any other person:
(a) the existence of the Order of Authorization; (b) the
existence of the Order to Service Provider; (c) the existence of
the pen register and trap and trace device; (d) the production of
the HISTORICAL CELL-SITE INFORMATION; and (e) the production of
the SPECIFIED SUBSCRIBER INFORMATION to the listed subscriber for
the SUBJECT TELEPHONES, the subscribers of the telephones
initiating incoming calls to or receiving outgoing calls from the
SUBJECT TELEPHONES, or to any other person, unless and until
otherwise ordered by the Court.  Any such disclosure might

16

jeopardize this investigation because it would alert the targets to the existence of an investigation and might lead to the destruction and/or concealment of evidence, the flight of targets, and/or retaliation by the targets against John Doe #1.

15.   No prior request for the relief set forth herein has been made except to the extent set forth above.   The foregoing is affirmed under the penalties of perjury.   See 28 U.S.C. § 1746.

Dated:     Brooklyn, New York
           January  5 , 2012

Rachel J. Nash
Assistant United States Attorney
(718) 254-6072

17

TM:RJN
F.#2012R00002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK  

- - - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION             :
OF THE UNITED STATES OF AMERICA             :        SEALED ORDER
FOR AN ORDER (1) AUTHORIZING THE            :        OF AUTHORIZATION
USE OF A PEN REGISTER AND A TRAP AND        :
TRACE DEVICE; (2) AUTHORIZING               :
RELEASE OF SUBSCRIBER INFORMATION; AND      :
(3) AUTHORIZING THE RELEASE OF              :
HISTORICAL CELL-SITE INFORMATION            :
- - - - - - - - - - - - - - - - - - - - x

Upon the application of the United States of America,

THE COURT HEREBY FINDS:

        1.    Pursuant to 18 U.S.C. § 3123, the applicant has

certified that the information likely to be obtained by use of a

pen register and a trap and trace device on: (631) 398-7841, a

telephone subscribed to by Barbara Kanakis and issued by AT&T

Wireless (the "service provider") ("SUBJECT TELEPHONE") is

relevant to an ongoing criminal investigation being conducted by

the Federal Bureau of Investigation ("FBI" and the "investigative

agency") into possible violations of 18 U.S.C. §§ 1951(a), 892(a)

and 894(a) and others (the "specified offenses").

        2.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), the

applicant has offered specific and articulable facts showing that

there are reasonable grounds to believe that the subscriber and

historical cell-site information specified below are relevant and

material to an ongoing criminal investigation of the specified

offenses.

NOW, THEREFORE, IT IS HEREBY ORDERED:

3.    Pursuant to 18 U.S.C. § 3123, special agents of the investigative agency may install, or cause to be installed, and use a pen register to record or decode dialing, routing, addressing, or signaling information transmitted from the SUBJECT TELEPHONE — excluding the decoding of post-cut-through dialed digits ("PCTDD")[1] — to record the date and time of such dialings or transmissions, and to record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls for a period of 60 days, beginning at any time within 14 days from the date of this Order, and that the tracing operations be without geographical limits.

4.    Pursuant to 18 U.S.C. § 3123, special agents of the investigative agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely

_____

[1]    PCTDD "are digits that are dialed from a telephone after a call is connected or 'cut-through.'"  In re Application, 632 F. Supp. 2d 202, 203 n.1 (E.D.N.Y. 2008).  Pursuant to the proposed Order to Service Provider, if possible, the provider will forward only pre-cut-through-dialed digits to the investigative agency.  If the provider's technical capabilities require it to forward all dialed digits, including PCTDD, however, the investigative agency shall only decode and forward to the assigned special agents the numbers that are dialed before the call is cut through.

to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and that the tracing operations be without geographical limits.

5.   Pursuant to 18 U.S.C. § 2703(c)(1) and (d), for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider and any other local, long distance or wireless carrier servicing the SUBJECT TELEPHONE shall supply subscriber information pertaining to telephone numbers identified through the pen register and trap and trace device, to be limited to the names and addresses, whether listed or unlisted, length of service, periods of telephone activation and means of payment for all dialing, routing, addressing, or signaling information captured by the pen register on the SUBJECT TELEPHONE and for dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the SUBJECT TELEPHONE as captured by the trap and trace device on the SUBJECT TELEPHONE ("SPECIFIED SUBSCRIBER

INFORMATION"),[2] upon oral or written request by special agents of the investigative agency.

6.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), within seven days the service provider shall supply recorded information that identifies the antenna tower that received transmissions from the SUBJECT TELEPHONE at the beginning and the end of calls or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower received the transmission ("HISTORICAL CELL-SITE INFORMATION"), for the periods from July 1, 2011 through August 31, 2011 and November 25, 2011 through December 9, 2011.

7.    This authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone numbers listed above for the SUBJECT TELEPHONE, but also to any changed telephone number assigned to an instrument bearing the same ESN/IMSI as the SUBJECT TELEPHONE, or any changed ESN/IMSI subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN/IMSI, whether the changes occur consecutively or simultaneously, listed to the same

---

[2]    The SPECIFIED SUBSCRIBER INFORMATION includes records that would also be subject to disclosure by subpoena under 18 U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes "local and long distance telephone connection records, or records of session times and durations" as described in 18 U.S.C. § 2703(c)(2)(C).

4

subscriber and wireless telephone account numbers as the SUBJECT
TELEPHONE.

   8. The service provider and any other person or
entity providing wire or electronic communication service in the
United States whose assistance is used to facilitate execution of
the Order shall notify special agents of the investigative
agency, upon oral or written request, of any and all changes in
service regarding the SUBJECT TELEPHONE to include telephone
numbers and subscriber information (published and non-published
and excepting call detail records as described in 18 U.S.C.
§ 2703(c)(2)(C)) associated with these service changes.

   9. Pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2)
and 18 U.S.C. § 2703(c) and (d), the service provider and any
other person or entity providing wire or electronic communication
service in the United States whose assistance may facilitate
execution of the Order shall furnish special agents of the
investigative agency forthwith all information, including but not
limited to telephone subscriber information, facilities, and
technical assistance necessary to accomplish the installation and
use of the pen register and trap and trace device unobtrusively
and with minimum interference.

   10. The service provider and any other person or
entity providing wire or electronic communication service in the
United States whose assistance is used to facilitate execution of

the Order shall furnish the results of the pen register and trap
and trace device installations to special agents of the
investigative agency as soon as practicable, and on a continuing
basis, 24 hours a day for the duration of the Order.

11.   The service provider and any other person or
entity whose assistance is used to facilitate this Order shall be
compensated by the investigative agency for reasonable expenses
directly incurred in providing such assistance.

12.   Good cause having been shown, pursuant to 18
U.S.C. §§ 3123(d) and 2705(b), this Order and the application
shall be sealed until otherwise ordered by the Court, and the
service provider, its representatives, agents and employees, and
any other person or entity involved in facilitating this Order
shall not disclose in any manner, directly or indirectly, by any
action or inaction, (a) the existence of the Order of
Authorization; (b) the existence of the Order to Service
Provider; (c) the existence of the pen register and trap and
trace device; (d) the production of the HISTORICAL CELL-SITE
INFORMATION; and (e) the production of the SPECIFIED SUBSCRIBER
INFORMATION, to the listed subscriber for the SUBJECT TELEPHONE,
the subscribers of the telephones initiating incoming

6

calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated:     Brooklyn, New York
           January  6 , 2012

                                    _____
                                    THE HONORABLE JOAN M. AZRACK
                                    UNITED STATES MAGISTRATE JUDGE
                                    EASTERN DISTRICT OF NEW YORK

7

TM:RJN
F.#2012R00002

MISC.   12 - 008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION         :
OF THE UNITED STATES OF AMERICA         :
FOR AN ORDER (1) AUTHORIZING THE        :    SEALED ORDER TO
USE OF A PEN REGISTER AND A TRAP AND    :    SERVICE PROVIDER
TRACE DEVICE; (2) AUTHORIZING           :
RELEASE OF SUBSCRIBER INFORMATION; AND  :
(3) AUTHORIZING THE RELEASE OF          :
HISTORICAL CELL-SITE INFORMATION        :
- - - - - - - - - - - - - - - - - - - - x

WHEREAS this Court has, upon the application of the
United States of America, entered an Order authorizing a pen
register and trap and trace device and the release of historical
cell-site information, the Court hereby ORDERS:

1.   Pursuant to 18 U.S.C. § 3123, special agents of
the Federal Bureau of Investigation ("FBI") (the "investigative
agency") may install, or cause to be installed, and use a pen
register to record or decode dialing, routing, addressing, or
signaling information transmitted from: (631) 398-7841, a
telephone subscribed to by Barbara Kanakis and issued by AT&T
Wireless (the "service provider") ("SUBJECT TELEPHONE"); to
record the date and time of such dialings or transmissions, and
to record the length of time the telephone receiver in question
is "off the hook" for incoming or outgoing calls for a period of
60 days, beginning at any time within 14 days from the date of
this Order.

2.   To the extent possible in light of the service provider's technical capabilities, the service provider shall forward to the investigative agency only those digits dialed before a call is cut-through.  However, to the extent that the service provider is unable to exclude post-cut-through dialed digits, the service provider shall forward all dialed digits to the investigative agency.

3.   Pursuant to 18 U.S.C. § 3123, special agents of the investigative agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and the tracing operations shall be without geographical limits.

4.   Pursuant to 18 U.S.C. § 2703(c)(1) and (d), for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider and any local, long distance or wireless provider, or person or entity providing wire or electronic communication service in the United States or any other person or entity servicing either the SUBJECT TELEPHONE or

2

a telephone that communicates with the SUBJECT TELEPHONE, shall
supply subscriber information pertaining to telephone numbers
identified through the pen register and trap and trace device, to
be limited to the names and addresses, whether listed or
unlisted, length of service, periods of telephone activation and
means of payment for all dialing, routing, addressing, or
signaling information captured by the pen register on the SUBJECT
TELEPHONE and for dialing, routing, addressing, or signaling
information reasonably likely to identify the source of a wire or
electronic communication transmitted to the SUBJECT TELEPHONE as
captured by the trap and trace device on the SUBJECT TELEPHONE
("SPECIFIED SUBSCRIBER INFORMATION"),[1] upon oral or written
request by special agents of the investigative agency.

        5.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), within
seven days the service provider shall supply recorded information
identifying the antenna tower that received transmissions from
the SUBJECT TELEPHONE at the beginning and the end of calls or
text message transmission made or received by the SUBJECT
TELEPHONE, including information on what portion of that tower
received the transmission ("HISTORICAL CELL-SITE INFORMATION"),

---

        [1]    The SPECIFIED SUBSCRIBER INFORMATION includes records
that would also be subject to disclosure by subpoena under 18
U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes
"local and long distance telephone connection records, or records
of session times and durations" as described in 18 U.S.C.
§ 2703(c)(2)(C).

3

for the periods from July 1, 2011 through August 31, 2011 and November 25, 2011 through December 9, 2011.

6.   Pursuant to 18 U.S.C. § 3123(b)(1)(C), the authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone numbers listed above for the SUBJECT TELEPHONE, but also to any changed telephone number assigned to an instrument bearing the same ESN/IMSI as the SUBJECT TELEPHONE, or any changed ESN/IMSI subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN/IMSI, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the SUBJECT TELEPHONE.

7.   The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall notify special agents of the investigative agency, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONES, including telephone numbers and subscriber information (published and non-published, and excepting call detail records, as described in 18 U.S.C. § 2703(c)(2)(C)), associated with these service changes.

4

8.    Pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), and 18 U.S.C. § 2703(c) and (d), upon service of this Order upon it the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall furnish special agents of the investigative agency forthwith all information, including but not limited to telephone subscriber information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device unobtrusively and with minimum interference.

9.    The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order furnish the results of the pen register and trap and trace device installations to special agents of the investigative agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

10.    The service provider and any other person or entity that provides technical assistance in executing this Order shall be compensated by the investigative agency for reasonable expenses directly incurred in providing such assistance.

11.    This Order shall be sealed until otherwise ordered by the Court, except that copies may be retained by the United

5

States Attorney's Office, the investigative agency, the service provider and any other person or entity whose assistance is used to execute this Order.

12.   Unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction: (a) the existence of the Order of Authorization; (b) the existence of the Order to Service Provider; (c) the existence of the pen register and trap and trace device; (d) the production of the HISTORICAL CELL-SITE INFORMATION and; (e) the production of the SPECIFIED SUBSCRIBER INFORMATION, to the listed subscribers for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated:   Brooklyn, New York
         January ___, 2012


                                    _____
                                    THE HONORABLE JOAN M. AZRACK
                                    UNITED STATES MAGISTRATE JUDGE
                                    EASTERN DISTRICT OF NEW YORK

6

TM:RJN
F.#2012R00002

UNITED STATES DISTRICT COURT **MISC,**
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION        :
OF THE UNITED STATES OF AMERICA        :       SEALED ORDER
FOR AN ORDER (1) AUTHORIZING THE       :       OF AUTHORIZATION
USE OF A PEN REGISTER AND A TRAP AND    :
TRACE DEVICE; (2) AUTHORIZING          :
RELEASE OF SUBSCRIBER INFORMATION; AND  :
(3) AUTHORIZING THE RELEASE OF         :
HISTORICAL CELL-SITE INFORMATION       :
- - - - - - - - - - - - - - - - - - - x

Upon the application of the United States of America,

THE COURT HEREBY FINDS:

      1.    Pursuant to 18 U.S.C. § 3123, the applicant has

certified that the information likely to be obtained by use of a

pen register and a trap and trace device on: (646) 626-2254, a

telephone issued by MetroPCS (the "service provider") ("SUBJECT

TELEPHONE")[1] is relevant to an ongoing criminal investigation

being conducted by the Federal Bureau of Investigation ("FBI" and

the "investigative agency") into possible violations of 18 U.S.C.

§§ 1951(a), 892(a) and 894(a) and others (the "specified

offenses").

      2.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), the

applicant has offered specific and articulable facts showing that

there are reasonable grounds to believe that the subscriber and

historical cell-site information specified below are relevant and

---

     [1]    Investigative Agents have not yet been able to
determine the subscriber information for the SUBJECT TELEPHONE.

material to an ongoing criminal investigation of the specified offenses.

NOW, THEREFORE, IT IS HEREBY ORDERED:

3.    Pursuant to 18 U.S.C. § 3123, special agents of the investigative agency may install, or cause to be installed, and use a pen register to record or decode dialing, routing, addressing, or signaling information transmitted from the SUBJECT TELEPHONE — excluding the decoding of post-cut-through dialed digits ("PCTDD")[2] — to record the date and time of such dialings or transmissions, and to record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls for a period of 60 days, beginning at any time within 14 days from the date of this Order, and that the tracing operations be without geographical limits.

4.    Pursuant to 18 U.S.C. § 3123, special agents of the investigative agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other

---

[2]    PCTDD "are digits that are dialed from a telephone after a call is connected or 'cut-through.'" In re Application, 632 F. Supp. 2d 202, 203 n.1 (E.D.N.Y. 2008).   Pursuant to the proposed Order to Service Provider, if possible, the provider will forward only pre-cut-through-dialed digits to the investigative agency.   If the provider's technical capabilities require it to forward all dialed digits, including PCTDD, however, the investigative agency shall only decode and forward to the assigned special agents the numbers that are dialed before the call is cut through.

2

impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and that the tracing operations be without geographical limits.

5.   Pursuant to 18 U.S.C. § 2703(c)(1) and (d), for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider and any other local, long distance or wireless carrier servicing the SUBJECT TELEPHONE shall supply subscriber information pertaining to telephone numbers identified through the pen register and trap and trace device, to be limited to the names and addresses, whether listed or unlisted, length of service, periods of telephone activation and means of payment for all dialing, routing, addressing, or signaling information captured by the pen register on the SUBJECT TELEPHONE and for dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the SUBJECT TELEPHONE as captured by the trap and trace device on the SUBJECT TELEPHONE ("SPECIFIED SUBSCRIBER

INFORMATION"),[3] upon oral or written request by special agents of the investigative agency.

6.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), within seven days the service provider shall supply recorded information that identifies the antenna tower that received transmissions from the SUBJECT TELEPHONE at the beginning and the end of calls or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower received the transmission ("HISTORICAL CELL-SITE INFORMATION"), for the period from November 25, 2011 through December 9, 2011.

7.    This authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone numbers listed above for the SUBJECT TELEPHONE, but also to any changed telephone number assigned to an instrument bearing the same ESN/IMSI as the SUBJECT TELEPHONE, or any changed ESN/IMSI subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN/IMSI, whether the changes occur consecutively or simultaneously, listed to the same

---

[3]    The SPECIFIED SUBSCRIBER INFORMATION includes records that would also be subject to disclosure by subpoena under 18 U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes "local and long distance telephone connection records, or records of session times and durations" as described in 18 U.S.C. § 2703(c)(2)(C).

subscriber and wireless telephone account numbers as the SUBJECT
TELEPHONE.

8.   The service provider and any other person or
entity providing wire or electronic communication service in the
United States whose assistance is used to facilitate execution of
the Order shall notify special agents of the investigative
agency, upon oral or written request, of any and all changes in
service regarding the SUBJECT TELEPHONE to include telephone
numbers and subscriber information (published and non-published
and excepting call detail records as described in 18 U.S.C.
§ 2703(c)(2)(C)) associated with these service changes.

9.   Pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2)
and 18 U.S.C. § 2703(c) and (d), the service provider and any
other person or entity providing wire or electronic communication
service in the United States whose assistance may facilitate
execution of the Order shall furnish special agents of the
investigative agency forthwith all information, including but not
limited to telephone subscriber information, facilities, and
technical assistance necessary to accomplish the installation and
use of the pen register and trap and trace device unobtrusively
and with minimum interference.

10.   The service provider and any other person or
entity providing wire or electronic communication service in the
United States whose assistance is used to facilitate execution of

5

the Order shall furnish the results of the pen register and trap and trace device installations to special agents of the investigative agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

11. The service provider and any other person or entity whose assistance is used to facilitate this Order shall be compensated by the investigative agency for reasonable expenses directly incurred in providing such assistance.

12. Good cause having been shown, pursuant to 18 U.S.C. §§ 3123(d) and 2705(b), this Order and the application shall be sealed until otherwise ordered by the Court, and the service provider, its representatives, agents and employees, and any other person or entity involved in facilitating this Order shall not disclose in any manner, directly or indirectly, by any action or inaction, (a) the existence of the Order of Authorization; (b) the existence of the Order to Service Provider; (c) the existence of the pen register and trap and trace device; (d) the production of the HISTORICAL CELL-SITE INFORMATION; and (e) the production of the SPECIFIED SUBSCRIBER INFORMATION, to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming

6

calls to or receiving outgoing calls from the SUBJECT TELEPHONE,
or to any other person.

Dated:     Brooklyn, New York
           January  6 , 2012

                              _____
                              THE HONORABLE JOAN M. AZRACK
                              UNITED STATES MAGISTRATE JUDGE
                              EASTERN DISTRICT OF NEW YORK

7

TM:RJN
F.#2012R00002

**MISC.** ⸱ ⸱ ⸱ **-003**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -x
IN THE MATTER OF AN APPLICATION       :
OF THE UNITED STATES OF AMERICA       :       SEALED ORDER TO
FOR AN ORDER (1) AUTHORIZING THE      :       <u>SERVICE PROVIDER</u>
USE OF A PEN REGISTER AND A TRAP AND  :
TRACE DEVICE; (2) AUTHORIZING         :
RELEASE OF SUBSCRIBER INFORMATION; AND :
(3) AUTHORIZING THE RELEASE OF        :
HISTORICAL CELL-SITE INFORMATION      :
- - - - - - - - - - - - - - - - - - - -x

WHEREAS this Court has, upon the application of the
United States of America, entered an Order authorizing a pen
register and trap and trace device and the release of historical
cell-site information, the Court hereby ORDERS:

1.   Pursuant to 18 U.S.C. § 3123, special agents of
the Federal Bureau of Investigation ("FBI") (the "investigative
agency") may install, or cause to be installed, and use a pen
register to record or decode dialing, routing, addressing, or
signaling information transmitted from: (646) 626-2254, a
telephone issued by MetroPCS (the "service provider") ("SUBJECT
TELEPHONE")[1]; to record the date and time of such dialings or
transmissions, and to record the length of time the telephone
receiver in question is "off the hook" for incoming or outgoing
calls for a period of 60 days, beginning at any time within 14
days from the date of this Order.

---

[1]   Investigative Agents have not yet been able to
determine the subscriber information for the SUBJECT TELEPHONE.

2.   To the extent possible in light of the service provider's technical capabilities, the service provider shall forward to the investigative agency only those digits dialed before a call is cut-through.  However, to the extent that the service provider is unable to exclude post-cut-through dialed digits, the service provider shall forward all dialed digits to the investigative agency.

3.   Pursuant to 18 U.S.C. § 3123, special agents of the investigative agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and the tracing operations shall be without geographical limits.

4.   Pursuant to 18 U.S.C. § 2703(c)(1) and (d), for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider and any local, long distance or wireless provider, or person or entity providing wire or electronic communication service in the United States or any other person or entity servicing either the SUBJECT TELEPHONE or

2

a telephone that communicates with the SUBJECT TELEPHONE, shall
supply subscriber information pertaining to telephone numbers
identified through the pen register and trap and trace device, to
be limited to the names and addresses, whether listed or
unlisted, length of service, periods of telephone activation and
means of payment for all dialing, routing, addressing, or
signaling information captured by the pen register on the SUBJECT
TELEPHONE and for dialing, routing, addressing, or signaling
information reasonably likely to identify the source of a wire or
electronic communication transmitted to the SUBJECT TELEPHONE as
captured by the trap and trace device on the SUBJECT TELEPHONE
("SPECIFIED SUBSCRIBER INFORMATION"),[2] upon oral or written
request by special agents of the investigative agency.

     5.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), within
seven days the service provider shall supply recorded information
identifying the antenna tower that received transmissions from
the SUBJECT TELEPHONE at the beginning and the end of calls or
text message transmission made or received by the SUBJECT
TELEPHONE, including information on what portion of that tower

---

    [2]    The SPECIFIED SUBSCRIBER INFORMATION includes records
that would also be subject to disclosure by subpoena under 18
U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes
"local and long distance telephone connection records, or records
of session times and durations" as described in 18 U.S.C.
§ 2703(c)(2)(C).

received the transmission ("HISTORICAL CELL-SITE INFORMATION"),
for the period from November 25, 2011 through December 9, 2011.

      6.    Pursuant to 18 U.S.C. § 3123(b)(1)(C), the
authorization for the installation and use of a pen register and
a trap and trace device applies not only to the telephone numbers
listed above for the SUBJECT TELEPHONE, but also to any changed
telephone number assigned to an instrument bearing the same
ESN/IMSI as the SUBJECT TELEPHONE, or any changed ESN/IMSI
subsequently assigned to the same telephone number as the SUBJECT
TELEPHONE, or any additional changed telephone number and/or
ESN/IMSI, whether the changes occur consecutively or
simultaneously, listed to the same subscriber and wireless
telephone account number as the SUBJECT TELEPHONE.

      7.    The service provider and any other person or
entity providing wire or electronic communication service in the
United States whose assistance is used to facilitate execution of
the Order shall notify special agents of the investigative
agency, upon oral or written request, of any and all changes
(including additions, deletions, and transfers) in service
regarding the SUBJECT TELEPHONES, including telephone numbers and
subscriber information (published and non-published, and
excepting call detail records, as described in 18 U.S.C.
§ 2703(c)(2)(C)), associated with these service changes.

8. Pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), and 18 U.S.C. § 2703(c) and (d), upon service of this Order upon it the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall furnish special agents of the investigative agency forthwith all information, including but not limited to telephone subscriber information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device unobtrusively and with minimum interference.

9. The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order furnish the results of the pen register and trap and trace device installations to special agents of the investigative agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

10. The service provider and any other person or entity that provides technical assistance in executing this Order shall be compensated by the investigative agency for reasonable expenses directly incurred in providing such assistance.

5

11.  This Order shall be sealed until otherwise ordered by the Court, except that copies may be retained by the United States Attorney's Office, the investigative agency, the service provider and any other person or entity whose assistance is used to execute this Order.

12.  Unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction: (a) the existence of the Order of Authorization; (b) the existence of the Order to Service Provider; (c) the existence of the pen register and trap and trace device; (d) the production of the HISTORICAL CELL-SITE INFORMATION and; (e) the production of the SPECIFIED SUBSCRIBER INFORMATION, to the listed subscribers for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated:      Brooklyn, New York
            January 1 , 2012


_____
THE HONORABLE JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

6